IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-02866-PAB-NRN
MICHAEL DRISCOLL,

      Plaintiff,

v.

THE CITY AND COUNTY OF DENVER, a municipal entity;
CHIEF OF POLICE PAUL PAZEN, in his individual capacity,
PATRICK PHELAN, in his individual capacity;
RICK EBERHARTER, in his individual capacity;
TIMOTHY HYATT, in his individual capacity;
CHRISTOPHER COCHRAN, in his individual capacity;
MICHAEL ERICKSON, in his individual capacity;
KYLE JANOSKO, in his individual capacity;
KALEB MCCARTHY, in his individual capacity;
MATTHEW DOMENICO, in his individual capacity;
DAVID ADAMS, in his individual capacity,

      Defendants.

---

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT TO ADD ALLEGATIONS RELATING TO MUNICIPAL CLAIMS

---

Defendants Paul Pazen, Patrick Phelan, and City and County of Denver ("Denver") oppose Plaintiff Michael Driscoll's Motion for Leave to file an Amended Complaint [Doc. 136].

### INTRODUCTION

Plaintiff seeks to amend his complaint, again, on meritless grounds. According to him, he must amend the Complaint and Scheduling Order to add 62 allegations based on information he obtained during discovery in this case. But this is not true. Over half of the "new" allegations are directly copied and pasted from other protest cases Plaintiff's counsel worked on years ago. Another dozen are likewise based on allegations from the copied complaints but restated to fit the facts here. And the rest stem from the public OIM Report released in 2020 and a manual Plaintiff's counsel has possessed

since July 2022. There is nothing new about any of it. In fact, Plaintiff has simply repeated allegations from earlier cases against Denver, including one before this very Court: *Dominick v. City & Cnty. of Denver*, No. 1:22-cv-01343-PAB-NRN. Plaintiff's motion is premised on a misrepresentation, and the Court should not tolerate it.[1]

## RELEVANT PROCEDURAL HISTORY

Plaintiff has filed a series of complaints in this case. Since the initial complaint, each amended version seeks to add new information after the statute of limitations. Defendants have opposed and/or sought dismissal of each subsequent iteration. Specifically:

- Plaintiff filed a Motion for Leave to file First Amended Complaint on January 9, 2023 [Doc. 29]. Defendants opposed that motion, arguing Plaintiff had taken no discovery in *this* case, specifically arguing Plaintiff had taken no depositions or other meaningful discovery and thus couldn't show the requisite diligence to amend. [Doc. 34]. The Magistrate Judge disagreed, recommending Plaintiff be granted leave to amend on February 28, 2023. [Doc. 39]. Defendants then filed an objection to the District Court [Doc. 42], which remained pending until it was mooted by the filing of Plaintiff's next amended complaint.

- Plaintiff filed his Second Amended Complaint ("SAC"), in an effort to cure Rule 11 issues raised by co-Defendant, on October 23, 2023 [Doc. 94]. Denver, Pazen, and Phelan moved to dismiss based on factual deficiencies. [Doc. 99]. All Defendants not initially sued moved to dismiss on, *inter alia,* statute of limitations grounds. [Docs. 98; 100-102].

---

[1] Defendants recognize a judicial preference to decide issues under Rule 12, rather than Rule 15 when possible. But given the importance of Rule 16 here, and Plaintiff's prior argument that certain Defendants were precluded from arguing Rule 16 in a motion to dismiss (Doc. 108 at 3), Defendants proceed in this manner to ensure their arguments are properly before the Court.

- At a status conference on January 11, 2024, less than three (3) months after he filed his SAC, Plaintiff's counsel indicated he would be seeking leave to file yet another complaint (which he indicated was in an abundance of caution, but was directly for the purpose of addressing arguments in Defendants' motion to dismiss). [Doc. 129].

- On February 11, 2024, Plaintiff filed the motion for leave to file a Third Amended Complaint ("TAC") [Doc. 136]. Defendants now oppose this motion.

- When the instant motion was filed on February 11, 2024, Plaintiff had still not taken any depositions in this case.

## ARGUMENT

The Court should deny Plaintiff leave to amend the Scheduling Order [Doc. 27] and Complaint [Doc. 94] because the "new" allegations are not based on any discovery in the case *sub judice*. Just the opposite, they are based entirely on information that Plaintiff's counsel received years ago, in other cases. With that in mind, because Plaintiff moved to amend after the deadline in the Scheduling Order, the Motion [Doc. 136] faces a two-step test. *Romero v. Altitude Sports & Ent., LLC*, No. 21-cv-00885-CMA-SKC, 2022 WL 3868134, at *1 (D. Colo. Aug. 30, 2022). First, the Court considers whether Plaintiff has demonstrated good cause to amend the Scheduling Order under Rule 16. *Id.* (quoting *Gorsuch, Ltd., v. Wells Fargo Nat'l Bank*, 771 F.3d 1230, 1240 (10th Cir. 2014)). If he hasn't, the analysis ends there; but if he has, the Court then determines whether to allow the amendment under Rule 15. *Id.* at *2. Given those distinct steps, Denver first addresses Rule 16, then turns to Rule 15.

### A. Because Plaintiff's Allegations are Based on Facts Known to Plaintiff's Counsel for Years, the Amendment Fails Under Rule 16.

"Rule 16's good cause requirement may be satisfied 'if a plaintiff learns *new information through discovery* or if the underlying law has changed.'" *Romero*, 2022 WL 3868134, at *2 (quoting *Gorsuch*, 771

3

F.3d at 1240) (emphasis added). Plaintiff knows this and tethers his motion to the requirement. In explaining the basis for the motion, Plaintiff states his added allegations are "based on discovery in this case and Plaintiff's expert report served on Defendants on July 29, 2023." [Doc. 136 at 3]. He also writes: "If a plaintiff learns new information through discovery, good cause to amend may be established under [Federal Rule of Civil Procedure 16(b)(4)]. . . Conversely, *if the plaintiff knew of the conduct substantiating the claim, but simply failed to raise the claims, the plaintiff has failed to show good cause*, and the claims are barred."[2] [Doc. 136 at 6 (citing *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015)) (emphasis added)]. Clearly, Plaintiff's motion is based on the premise that he learned new information in this lawsuit, which now compels to him to amend.

The assertion is false. The majority of the "new" allegations are copied and pasted from complaints Plaintiff's counsel filed nearly two years ago, before the Scheduling Order's deadline to amend pleadings: November 30, 2022. *See* Exs. A, B, C.[3] Though Exhibit A provides a full comparison, here is a sampling:

| *Driscoll* (filed 2/11/24) | *Abay* (6/23/22)[4] | *Dominick* (9/5/22) |
|---|---|---|
| Defendant Denver and its final policymakers acted with deliberate indifference to the constitutional rights of protestors by authorizing, both explicitly and implicitly, the | Defendant Denver and its final policymakers acted with deliberate indifference to the constitutional rights of protestors by authorizing, both explicitly and implicitly, the use of "less-lethal" force | Defendant Denver and its final policymakers acted with deliberate indifference to the constitutional rights of protestors by authorizing, both explicitly and implicitly, the use of "less-lethal" force |

---

[2] Plaintiff language is about adding claims, but the same standard applies to adding allegations. *See Overhead Solutions, Inc. v. A1 Garage Door Service, L.L.C.*, No. 1:19-cv-01741-PAB-NYW, 2021 WL 4046408, at *2, *3 (D. Colo. May 5, 2021); *Romero v. Altitude Sports & Ent., LLC*, No. 21-cv-00885-CMA-SKC, 2022 WL 3868134, at *4 (D. Colo. Aug. 30, 2022); *Hamric v. Wilderness Expeditions, Inc.*, No. 19-cv-01442-NYW, 2020 WL 10505199, at *4 (D. Colo. Apr. 1, 2020).

[3] To be clear, Defendants do not argue or suggest that copying and pasting allegations from other complaints is improper. To the contrary, Defendants recognize this often makes sense. But the significance here solely relates to timing; the fact that these allegations were copied and pasted from the prior ones shows that Plaintiff's amendment is *not* "based on discovery in this case and Plaintiff's expert report served on Defendants on July 29, 2023." [Doc. 136 at 3].

[4] Plaintiff's counsel represented a plaintiff in *Abay*.

4

| | | |
|---|---|---|
| use of "less-lethal" force against protestors who do not pose any safety threat; by failing to properly train, supervise, and discipline officers regarding the proper use of force against protestors; by failing to rectify the unconstitutional custom of officers using "less-lethal" force to control and suppress demonstrations; and by failing to provide adequate policies. This constituted a conscious choice by Defendant Denver not to properly train, supervise, discipline, rectify, or provide adequate policies on these issues. ¶ 278 | against protestors who do not pose any safety threat; by failing to properly train, supervise, and discipline officers regarding the proper use of force against protestors; by failing to rectify the unconstitutional custom of officers using "less-lethal" force to control and suppress demonstrations; and by failing to provide adequate policies. This constituted a conscious choice by Defendant Denver not to properly train, supervise, discipline, rectify, or provide adequate policies on these issues. ¶ 206 | against protestors who do not pose any safety threat; by failing to properly train, supervise, and discipline officers regarding the proper use of force against protestors; by failing to rectify the unconstitutional custom of officers using "less-lethal" force to control and suppress demonstrations; and by failing to provide adequate policies. This constituted a conscious choice by Defendant Denver not to properly train, supervise, discipline, rectify, or provide adequate policies on these issues. ¶ 186 |
| Moreover, Defendant Denver is responsible for the actions of any non-DPD officers whose services were used during the protests. By using those services, Defendant Denver was required to ensure that all officers complied with civilians' constitutional rights. ¶ 279 | Moreover, Defendant Denver is responsible for the actions of any non-DPD officers whose services were used during the protests. By using those services, Defendant Denver was required to ensure that all officers complied with civilians' constitutional rights. ¶ 207 | Moreover, Defendant Denver is responsible for the actions of any non-DPD officers whose services were used during the protests. By using those services, Defendant Denver was required to ensure that all officers complied with civilians' constitutional rights. ¶ 187 |
| Chief Pazen was fully knowledgeable and apprised of the actions of DPD officers described above and, upon information and belief, was on site on one or more days of the protest, observing this DPD operation, without repudiating or stopping the actions of DPD officers, thereby ratifying them. ¶ 280 | Chief Pazen was fully knowledgeable and apprised of the actions of DPD officers described above and, upon information and belief, was on site on one or more days of the protest, observing this DPD operation, without repudiating or stopping the actions of DPD officers, thereby ratifying them. ¶ 208 | Chief Pazen was fully knowledgeable and apprised of the actions of DPD officers described above and, upon information and belief, was on site on one or more days of the protest, observing this DPD operation, without repudiating or stopping the actions of DPD officers, thereby ratifying them. ¶ 188 |
| DPD operated under the Incident Command System during the protestors. Defendant Phelan was the Incident Commander throughout the protests, and as such, no action was taken | DPD operated under the Incident Command System during the protestors. Defendant Phelan was the Incident Commander throughout the protests, and as such, no action was taken | DPD operated under the Incident Command System during the protests. Defendant Phelan was the Incident Commander throughout the protests, and as such, no action was taken |

| | | |
|---|---|---|
| during the protests without being directed or authorized by Phelan. ¶ 281 | during the protests without being directed or authorized by Phelan. ¶ 209 | during the protests without being directed or authorized by Phelan. ¶ 189 |
| Defendant Denver delegated to Patrick Phelan, as Incident Commander, final decision- and policymaking authority over the protests and the police response to the protests. Phelan was in charge of coordinating the officers in the field and directed when and what kinds of force officers could use on protestors. ¶ 282 | Defendant Denver delegated to Patrick Phelan, as Incident Commander, final decision- and policymaking authority over the protests and the police response to the protests. Phelan was in charge of coordinating the officers in the field and directed when and what kinds of force officers could use on protestors. ¶ 18 | Defendant Denver delegated to Patrick Phelan, as Incident Commander, final decision and policymaking authority over the protests and the police response to the protests. Phelan was in charge of coordinating the officers in the field and directed when and what kinds of force officers could use on protestors. ¶ 208 |
| As Incident Commander, Defendant Phelan was in charge of the officers from the other law enforcement agencies who provided mutual aid. Phelan gave the same direction, guidance, and rules of engagement to the officers from other agencies as he did to DPD officers. ¶ 283 | As Incident Commander, Defendant Phelan was in charge of the officers from the other law enforcement agencies who provided mutual aid. Phelan gave the same direction, guidance, and rules of engagement to the officers from other agencies as he did to DPD officers. ¶ 24 | As Incident Commander, Defendant Phelan was in charge of the officers from the other law enforcement agencies who provided mutual aid. Phelan gave the same direction, guidance, and rules of engagement to the officers from other agencies as he did to DPD officers. ¶ 209 |

That's the tip of the iceberg. Another dozen allegations contain the same information as those other complaints but are simply recast to better fit the facts here. *See* Ex. D (citing Doc. 136-2 ¶¶ 285, 290, 295, 297–99, 308, 311, 313, 316, 331, 337). And the remaining ones come from the Office of the Independent Monitor ("OIM") report released to the public in 2020 [*see* Doc. 136-2 ¶ 333; *id.* ¶¶ 303, 327–35] and Denver's Crowd Management Manual [*id.* ¶¶ 304, 305, 312], which Plaintiff's counsel received in, at the latest, July 2022, *see* Ex. E (*Abay* Initial Disclosures).[5] Therefore, the latest Plaintiff's counsel conceivably learned of *any* of the "new" information – let alone all of it – was July 2022.

Because Plaintiff had all that information before the November 2022 deadline to amend

---

[5] Technically, Plaintiff has two allegations that don't fall under those categories. One says the ACLU sent Denver a letter about the force used during the protests. [Doc. 136-2 ¶ 291]. And another is simply a typo that reads (in full): "In addition, because of the clear message[.]" [*Id.* ¶ 293]. Neither is relevant to Plaintiff's municipal claims.

pleadings in this case, he could have—and should have—amended his complaint ahead of time. Instead, he glossed over the allegations, ignored the deadline, then attempted to pass off the information as newly discovered when he found himself in a bind two years later. That is egregious and insufficient to overcome Rule 16. *See Hamric v. Wilderness Expeditions, Inc.*, No. 19-cv-01442-NYW, 2020 WL 10505199, at *4 n.3 (D. Colo. Apr. 1, 2020) ("Plaintiff's statement, alone, without any additional argument or explanation regarding the newly obtained information and why it was not available to Plaintiff prior to her instant Motion to Amend, is an insufficient basis for this court to conclude that Plaintiff has met Rule 16(b)'s good cause requirement.").

Next, Plaintiff curiously complains that Denver filed a Motion to Dismiss [Doc. 99]. The gist of his gripe is Denver knew the municipal allegations were faulty from the start but waited to file its motion until after the amendment deadline, and Plaintiff diligently attempted to amend his complaint soon after. [Doc. 136 at 2, 3, 6]. That is fatuity. For one, Denver could have sought judgment on the pleadings at any time. *See* Fed. R. Civ. P. 12(c). Moreover, there is simply no rule – nor could there be – that precludes a party from moving to dismiss an amended complaint after not moving on prior iterations of the same. And while Plaintiff characterizes this situation as a "quirk of the proceedings in this case where Plaintiff moved to Amend his Complaint to address other Defendants' Rule 11 conferral" (Doc. 136 at 4), this is nonsensical. Plaintiff cannot somehow place the consequences of being threatened with Rule 11 sanctions by a co-Defendant – requiring counsel to amend to remove the scandalous and/or impertinent information – on Denver, Pazen, or Phelan. Any plight created by Plaintiff's Rule 11 situation was his own making and any argument about unfair timing is toothless.

Second, and more importantly, Rule 16 requires Plaintiff to show he "could not have met the . . . deadline to amend the pleadings despite diligent efforts." *Gorsuch*, 771 F.3d at 1240. This is mandatory and not subject to judicial discretion. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (reversing a jury verdict in favor of the defendant because the trial court abused its

7

discretion by granting a belated motion to amend in the absence of "good cause" under Rule 16(b)(4)). Indeed, as Magistrate Judge Shaffer from this district observed:

> When a party seeks to amend a pleading after the scheduling deadline for doing so, the application of Rule 16(b)'s good-cause standard is not optional. To permit district courts to consider motions to amend pleadings under Rule 15(a) without regard to Rule 16(b) "would render scheduling orders meaningless and effectively . . . read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.

*Squires, ex rel. Squires v. Goodwin*, No. 10–cv–00309–CBS, 2012 WL 37508, at *3 (D. Colo. Jan. 9, 2012) (quoting *Sherman*, 532 F.3d at 716). Thus, Judge Shaffer had no choice but to deny a party leave to amend when the party "presumably had unfettered access" to the information supporting the amendment "well before the [scheduling order's] deadline." *Id.* at *6. The same reasoning compels denial of Plaintiff's motion here.

Here, Plaintiff could have easily reviewed his pleading before the deadline, noticed it was inadequate, and incorporated the allegations from his other cases. Instead, he waited until an opposing party pointed out he had failed to state a claim. "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000); *see also Ayon v. Kent Denver Sch.*, No. 12-cv-2546-WJM-CBS, 2014 WL 85287 (D. Colo. Jan. 9, 2014) (denying motion to amend when a party's failure to act is the reason it sought an amendment). Defendants Denver, Pazen, and Phelan should not be forced to engage in a whole new round of time-consuming briefing to address facts which should have been previously raised.

The bottom line is Plaintiff's amendment is based on information he had well before the deadline (and even before he filed his prior two amended complaints). And because he has no legal argument, Plaintiff essentially asks the Court to ignore established caselaw and grant him yet another bite at the apple. The requested relief is wholly unwarranted and should be denied.

### B. Plaintiff's Motion Fails Under Rule 15 for Undue Delay and Undue Prejudice.

Because Plaintiff has no legal basis to amend the Scheduling Order under Rule 16, the Court need not conduct a Rule 15 analysis. *See Romero*, 2022 WL 3868134, at *2. But if the Court decides otherwise, the Motion still falls short. Under Rule 15, leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (first citing *Castleglen, Inc. v. Resolution Tr. Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993); and then citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend . . . especially when the party filing the motion has no adequate explanation for the delay . . . ." *Id.* (collecting cases). Crucially, when "the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990). That principle has been consistently enforced in this circuit. For example, in *McKnight v. Kimberly Clark Corp.*, the Tenth Circuit affirmed a denial under Rule 15 when the "plaintiff was aware of all the information on which his proposed amended complaint" for a year before attempting to amend. 149 F.3d 1125, 1130 (10th Cir. 1998). In *Apodaca v. Corizon Health Care*, the court refused to grant leave for the same reasons when the plaintiff had known about the supporting facts for nine months before seeking to amend. No. 2:16-cv-00096-MV-LF, 2018 WL 1033202, at *3–4 (D. N.M. Feb. 23, 2018).

And just two months ago, Judge Moore from this district refused to let a pro se plaintiff amend because the amendment was "not based on new evidence that was unavailable at the time he filed his previous Amended Complaints." Ex. F *Carey v. Tisby*, No. 19-cv-00179-RM-STV, at 10 (D. Colo. Jan. 4, 2024). Rather, the Court explained "it simply purports to add additional information that, for

9

whatever reason, [the plaintiff] chose not to include in his original Complaint or the prior amendments." *Id.* And while Judge Moore recognized "[l]iberality in amendment is important to assure a party a fair opportunity to present his claims and defenses," he also emphasized "equal attention should be given to the proposition that there must be an end finally to a particular litigation." *Id.* at *10–11 (quoting *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994)).

With that in mind, the Court should deny Plaintiff leave to amend because the amendment is untimely and would result in undue prejudice. The amendment is untimely because it's based on facts Plaintiff's counsel has known about—at the latest—since June 2022. *See* Ex. A. He could have included the allegations in his First Amended Complaint (filed thirteen months ago [Doc. 29]), or his Second Amended Complaint (filed four months ago [Doc. 94]). Yet he sat on his hands and did nothing. Worst of all, the only conceivably viable explanation he offers for the delay, that he somehow learned about the information in discovery and/or his expert report in July 2023, is not true. If a pro se plaintiff cannot amend his complaint for the same reasons, *see* Ex. F, *Carey*, No. 19-cv-00179-RM-STV, at *10, it is hard to see why the Court would lower the bar when Plaintiff is represented by a licensed attorney.

Lastly, while Plaintiff argues no prejudice lies here since he served his expert report containing certain of the "new" allegations in July 2023, he is mistaken. For one, "prejudice to the opposing party need not also be shown[] . . . 'a district court acts within the bounds of its discretion when it denies leave to amend for 'untimeliness' or 'undue delay.'" *Las Vegas Ice*, 893 F.2d at 1185 (quoting *First City Bank, N.A. v. Air Capitol Aircraft Sales*, 820 F.2d 1127, 1133 (10th Cir. 1987)). Second, permitting Plaintiff to plug holes that Denver pointed in its Motion to Dismiss is unfairly prejudicial as it would allow him to plead around the Motion with facts he has known about for years. In theory it would – and in this case already has – result in perpetual amendments, which is exactly why this circuit does not tolerate it. *See, e.g.*, *McKnight*, 149 F.3d at 1130; *Carey*, No. 19-cv-00179-RM-STV, at 9–10. Third,

10

if the Court allowed Plaintiff to amend, Denver, Pazen, and Phelan would need to file another motion to dismiss, which would again moot the pending ones and could result in the case being pushed back even further. These Defendants – who were first sued in this case nearly 2 ½ years ago – have opposed Plaintiff's amendments and delays in this matter since they began. Indeed, consistent with Defendants' position and these efforts, the longer the case goes on, the harder it is for witnesses to remember key details from a protest that took place four years ago. This is especially true when Defendants' trial defense will rely on such recollections, including those of police officers and third-party witnesses, many of whom may no longer be in the area and/or may have forgotten certain of the events at issue.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion for Leave to Amend the Complaint. For the same reasons, the Second Amended Complaint should remain operative and Defendants' pending motions to dismiss should remain before the Court.

Dated March 4, 2024.

Respectfully submitted by,

*s/Jonathan Cooper*
Jonathan Cooper, Assistant City Attorney
Juliane T. DeMarco, Assistant City Attorney
Andres Alers, Assistant City Attorney
Denver City Attorney's Office
Civil Litigation Section
201 West Colfax Ave., Dep't 1108
Denver, CO 80202
Phone: (720) 913-3100
jonathan.cooper@denvergov.org
Juliane.DeMarco@denvergov.org
andres.alers@denvergov.org
*Counsel for the City and County of Denver,*
*Chief of Police Paul Pazen, Patrick Phelan, Christopher*
*Cochran and Rick Eberharter*

CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of March 2024, **THE RESPONSE OF DENVER, PAZEN, AND PHELAN OPPOSING PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT TO ADD ALLEGATIONS RELATING TO MUNICIPAL CLAIMS** was filed with the Clerk of the Court using the CM/ECF system, which will serve the following:

Ascend Counsel, LLC
Edward Milo Schwab
milo@ascendcounsel.co
Counsel for Plaintiff

*s/Jonathan Cooper*
Denver City Attorney's Office