EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore

Civil Action No. 19-cv-00179-RM-STV

ZHANDA CAREY,

    Plaintiff,

v.

KEVIN SANDOVAL,
JENNY SCHMEITS,
JACLEEN BROWN, and
KEVAN D. TISBY,

    Defendants.

## ORDER OF DISMISSAL

This matter is before the Court on several motions: (1) the Motion of Defendants Kevin Sandoval, Jenny Schmeits, and Jacleen Brown (the "State Defendants") to Dismiss Pursuant to Rule 12(b)(6) (ECF No. 71); (2) Defendant Kevan Tisby's Motion to Dismiss Plaintiff's Operative Complaint (ECF No. 73); and (3) Defendant Tisby's Motion to Strike Plaintiff's Proposed Complaint (ECF No. 84). Plaintiff Zhanda Carey filed Responses to each of the Motions to Dismiss (ECF Nos. 77, 79) and Defendants filed Replies (ECF Nos. 82,88). Mr. Carey also filed a Response to the Motion to Strike his Proposed Complaint. (ECF No. 98.) Upon consideration of the Motions, and being otherwise fully advised, the Court finds and orders as follows.

**I.      Background**

At the time of the events at issue in this case, Mr. Carey was serving a term of parole[1]. (ECF No. 35, p.5.) Although he no longer lived with his mother, Mr. Carey was visiting her apartment on April 9, 2018, when he received a call from Parole Officer Sandoval, directing him to come outside to meet with Officer Sandoval as well as Parole Officers Schmeits and Brown. (Id.) Mr. Carey complied, which he also did when the State Defendants directed him to admit them to his mother's apartment. (Id.) The State Defendants then apparently handcuffed him and searched the apartment, ultimately discovering a bullet in Mr. Carey's brother's bedroom. (Id. pp.5-6.) After finding the bullet the State Defendants continued to search the apartment, including the brother's backpack. (Id. p.6.) Inside the backpack they discovered a firearm. (Id.)

According to Mr. Carey, Officer Sandoval then commented that Mr. Carey was likely the owner of the gun due to his history of possessing illegal weapons. (Id.) Following a search of Mr. Carey's phone, that revealed photographs of, and internet searches about, firearms and fake guns, the State Defendants called the police. (Id.) Mr. Carey began to feel acute distress, apparently alerting the State Defendants that his mental illnesses, including PTSD and Schizoaffective Disorder were being triggered. (Id.) During that time the State Defendants apparently allowed the Denver Police, including Officer Tisby, to enter Mr. Carey's mother's home. (Id.) Mr. Carey, meanwhile, was beginning to suffer flashbacks to his time in prison.

Apparently, Mr. Carey was not wearing a shirt at that time, and he states that Officer Sandoval began to "wantonly throw a shirt in [Mr. Carey's] face." (Id. p.7.) Mr. Carey states that Officer Sandoval was thrusting the shirt at him in a provoking manner and without regard

---

[1] For the purposes of the Motions to Dismiss, the Court takes Mr. Carey's statements of fact from his Third Amended Complaint (ECF No. 35). It will separately address his Fourth Amended Complaint which contains additional factual allegations not reflected in this summary of the case background. (ECF No. 78.)

for his mental condition. (Id.) He points out that Officer Sandoval should have been aware of his mental health condition because Mr. Carey was on "mental health parole." (Id.) Mr. Carey states that, because of his mental illness and the fear he felt from having his shirt thrown in his face, he "jumped to run and accidentally collided with Defendant Sandoval." (Id.) He states that he was then "brought to the ground" by the Defendants, despite the fact that he was being compliant and was screaming because he was in pain. (Id.) He states that he was in so much pain that he asked the Defendants to shoot him and that in response Officer Tisby "mocked him" by saying something along the lines of "that only happens in the movies." (Id.)

Mr. Carey states that at that time he was in "agonizing pain," both mentally and physically, and that he still had the shirt, which the Defendants were attempting to force him to wear, around his face and neck. (Id. p.8.) He told the Defendants that he could not breathe, to which one of them apparently said "you can talk, so you can breathe." (Id.) When Mr. Carey threatened to sue the Officers, Officer Sandoval purportedly responded "for what?" (Id.) At that point the Defendants took Mr. Carey out of the apartment. (Id.) Mr. Carey was in such distress that he "banged [his] head on a soda machine trying to self harm." (Id.) In response, Officer Tisby grabbed Mr. Carey by the arm and turned him around as Mr. Carey continued to attempt to self-harm. (Id.) In this motion, Mr. Carey "accidentally bumped heads with Defendant Tisby." (Id.) In response, Officer Schmeits tased Mr. Carey. (Id.) Because his arms were in restraints, Mr. Carey had no way to break his fall and he hit his head very hard on the floor. (Id.) Officer Schmeits then apparently told Mr. Carey that if he moved, she would "light [his] ass up again." (Id.)

Mr. Carey filed his original complaint in this matter on January 1, 2019. (ECF No. 1.) At one point this matter was stayed during the pendency of the related criminal case against Mr.

3

Carey. (ECF No. 24.) Once that matter had been resolved, the Court reopened Mr. Carey's civil case. (ECF No. 32.) The Court repeatedly directed Mr. Carey to file Amended Complaints in order to cure certain deficiencies. (ECF Nos. 4, 6, 11, 18, 34.) The last of those Orders preceded the filing of the Third Amended Complaint discussed here. (ECF No. 35.)

In his Third Amended Complaint, Mr. Carey raised three claims for relief. (ECF No. 35.) First, he asserted a claim for the violation of his rights under the Fourth, Fifth, and Eighth Amendments. (Id. p. 5.) His second claim was for the use of excessive force in violation of his rights under the Fourth and Eighth Amendments. (Id. p.7.) Finally, his third claim was for the negligent infliction of emotional distress. (Id. p.8.) A Magistrate Judge recommended that the case be dismissed in part, and that Recommendation was adopted by the Court. (ECF Nos. 36, 39.) The Court dismissed all claims asserted against the Defendants in their official capacities. (ECF No. 39.) Mr. Carey's first and third claims were also dismissed for failure to comply with the pleading requirements of the Federal Rules of Civil Procedure. (Id.) Thus, the only claim that remained was his second claim for the use of excessive force.

Subsequently, Defendants filed their Motions to Dismiss. (ECF Nos. 71, 73.) On the same day that he filed his Response to the State Defendants' Motion to Dismiss, Mr. Carey also filed his Fourth Amended Complaint. (ECF No. 78.) In his Fourth Amended Complaint, Mr. Carey mentions several facts that he did not note in any of his previous Complaints, including an allegation that the Defendants attempted to choke him with his shirt, that Officer Brown applied "numb [sic] chucks" on Mr. Carey's feet until he bled, and that Officer Tisby assaulted Mr. Carey's "back torso area." (ECF No. 78, p.6.) He also states that the Defendants all restricted his breathing. (Id.) The Fourth Amended Complaint no longer mentions the use of the taser or any of the other events that took place in the hallway of the apartment building. (Id.) Mr. Carey

4

makes repeated reference to his mental and physical suffering during the alleged assault. He notes generally that his "injury would not have occurred without Defendants Sandoval, Schmeits, Brown, and Tisby's actions." (Id. p.7.) He does not, however, specify the nature of the injury for which he seeks relief.

In response to that filing, Officer Tisby filed a Motion asking that the Court strike the Fourth Amended Complaint (ECF No. 84), and the State Defendants filed a Notice of Non-Response to Plaintiff's Fourth Amended Complaint, (ECF No. 83), noting that because it was filed without the consent of the Defendants or the leave of the Court, no response was required. Mr. Carey responded to Officer Tisby's Motion by stating that he had timely filed his Amended Complaint within 21 days of receiving the responsive pleadings to his Third Amended Complaint. (ECF No. 98.) He points out that plaintiffs have a right to amend once as a matter of course, without seeking consent of the defendants or leave of the court. (Id.)

## II. Legal Standard

### A. Plaintiff's Pro Se Status

Plaintiff currently proceeds pro se; therefore, the Court construes Plaintiff's filings liberally but does not serve as his advocate. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009). And the Tenth Circuit has "has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quotation marks and citation omitted).

### B. Leave to Amend the Complaint

Pursuant to Fed. R. Civ. P. 15(a)(1),

> A party may amend its pleading once as a matter of course no later than (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

5

Under Fed. R. Civ. P. 15(a)(2), "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Such a Motion can properly be denied under certain circumstances, however. For example, untimeliness of an amendment can provide a sufficient reason by itself to deny leave to amend, "especially when the party filing the motion has no adequate explanation for the delay." *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365–66 (10th Cir.1993)). The Court must also consider whether an amendment will result in undue prejudice to the Defendants, "whether the request was unduly and inexplicably delayed," whether the amendment was offered in good faith, and whether the party had a sufficient opportunity to state a claim and failed to do so. *State Distributors, Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984).

    **C.**    **Motions to Dismiss**

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint (or counterclaim), view those allegations in the light most favorable to the non-movant, and draw all reasonable inferences in that party's favor. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). The complaint must allege a "plausible" right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007); *see also id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Conclusory allegations are insufficient, *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation omitted).

In determining whether a claim has been plausibly alleged, courts "do not require plaintiffs to establish a prima facie case. Instead, [courts] consider whether [plaintiffs] have set forth a plausible claim in light of the elements of their claim." *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1050 (10th Cir. 2020); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (same). When a party asserts claims against multiple defendants, "it is particularly important to make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations." *Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n,* 691 F. App'x 515, 519 (10th Cir. 2017) (internal quotation marks and citation omitted).

"Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Exceptions to this restriction are "(1) documents that the complaint incorporates by reference, (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity, and (3) matters of which a court may take judicial notice." *Id.* (internal quotation marks and citations omitted).

### D.     Qualified Immunity

Qualified immunity shields individual defendants named in § 1983 actions unless their conduct was unreasonable in light of clearly established law. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "[W]hen a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Id*. (quotation omitted). The district court may address the

7

steps in either order. *Carabajal v. City of Cheyenne, Wy.*, 847 F3d 1203, 1208 (10th Cir. 2017) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). If the plaintiff fails to satisfy either part of his burden, the court must grant qualified immunity. *Id.*

In determining whether a right has been clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* Such a right cannot be established "at a high level of generality." *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)).

Rather, the law must be particularized to the facts of the case—there need not be a case directly on point, but the statutory or constitutional question must be beyond debate. *Estate of Ceballos v. Hust*, 919 F.3d 1204, 1214 (10th Cir. 2019). The Court must "identify a case where an officer acting under similar circumstances" as the Defendants was held to have violated the Constitutional rights of the Plaintiff. *White*, 580 U.S. at 79.

## III. Discussion

The Court will begin with its consideration of Mr. Carey's Fourth Amended Complaint. If the Court accepts that Complaint as filed, the Motions to Dismiss would arguably be mooted. Only if those Motions remain live will the Court need to address them on their merits.

### A. Fourth Amended Complaint

Officer Tisby asks that this Court strike Mr. Carey's Fourth Amended Complaint because it was not timely filed, it was filed without the consent of the Defendants or the leave of the Court, it was the product of undue delay and dilatory motive, thus implicating bad faith, and it

8

would unfairly prejudice the Defendants. (ECF No.84.) With regard to the timeliness of the Amended Complaint, Officer Tisby notes that Fed. R. Civ. P. 15(a)(1) permits a plaintiff to amend his or her complaint once as a matter of course, but only within twenty-one (21) days of serving the initial complaint, or, if the pleading is one to which a response is required, within twenty-one (21) days of service of that responsive pleading or a motion pursuant to Fed. R. Civ. P. 12(b), (e), or (f), whichever is earlier. In this case, Officer Tisby notes, Mr. Carey had already amended his Complaint repeatedly even before the Defendants filed their Motions to Dismiss. (ECF Nos. 19, 28, 35.) Officer Tisby argues, therefore, that Mr. Carey was required to obtain either the consent of the Defendants or the leave of the Court pursuant to Fed. R. Civ. P. 15(a)(2). He notes that Mr. Carey obtained neither.

Officer Tisby also argues that Mr. Carey's Fourth Amended Complaint implicates bad faith, as it appears to have been filed as a result of undue delay and a dilatory motive. He points out that Mr. Carey was aware of all of the facts of this incident before he filed his first Complaint, (ECF No. 1), and those facts remained unchanged throughout the pendency of this litigation, including at the times he filed his Amended Complaints (ECF Nos. 19, 28, 35). Because, Officer Tisby argues, Mr. Carey had all of the information, yet he failed to add the pertinent facts, which have been mentioned for the first time in his Fourth Amended Complaint, the newest Amended Complaint suggests that Mr. Carey was acting in bad faith and with a dilatory motive. He further points out that because Mr. Carey filed that Fourth Amended Complaint only after receiving the Defendants' Motions to Dismiss, and thus was able to plug the holes that the Defendants had pointed out in his prior Amendments, it would be unfairly prejudicial to the Defendants for the Court to accept the Fourth Amended Complaint.

9

Mr. Carey responds that he filed his Fourth Amended Complaint within twenty-one days of the filing of the Defendants' Motions to Dismiss. (ECF No. 98.) He argues that this amendment was permitted as a matter of course. He also argues that he made his Fourth Amendment in good faith because the Defendants argued in their Motions to Dismiss that he failed to state a claim upon which relief can be granted, and that therefore he sought to more clearly specify the acts committed by each Defendant.

The Court notes that Mr. Carey has cited no authority, and the Court is aware of none, that stands for the proposition that an amended complaint filed at the direction of the Court is not considered an amendment for the purposes of Rule 15(a)(1). Even assuming, however, that an amendment made upon the Order of the Court is not an "amended complaint" for the purposes of Rule 15(a)(1), the Court nevertheless concludes that Mr. Carey's Amendment is not proper in this case.

As noted by Officer Tisby, Mr. Carey's Fourth Amended Complaint is not based on new evidence that was unavailable at the time he filed his previous Amended Complaints. Rather, it simply purports to add additional information that, for whatever reason, Mr. Carey chose not to include in his original Complaint or the prior amendments. "[W]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1366 (10th Cir. 1993) (quoting *Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1184 (10th Cir. 1990)).

Mr. Carey filed his Fourth Amended Complaint, moreover, almost three years after he filed his original Complaint. (ECF Nos. 1, 78.)

> A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim. Liberality in amendment is important to assure a party a fair

10

> opportunity to present his claims and defenses, but "equal attention should be given to the proposition that there must be an end finally to a particular litigation."

*Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) (*quoting Freeman v. Continental Gin Co.*, 381 F.2d 459, 469–70 (5th Cir.1967)). Mr. Carey offers no explanation for his lengthy delay in adding the new allegations.

For each of these reasons, the Court concludes that Mr. Carey's Fourth Amended Complaint should be STRICKEN pursuant to Fed. R. Civ. P. 12(f)(2).

### B. Motions to Dismiss

The Court turns next to the Defendants' Motions to Dismiss. The remaining claim from Mr. Carey's operative Complaint (ECF No. 35) is for 4th and 8th Amendment violations through the use of excessive force. As set forth above, Mr. Carey makes several allegations that the Defendants used force against him. Reading his Complaint liberally, as the Court must, Mr. Carey alleges that (1) Officer Sandoval repeatedly threw a shirt into Mr. Carey's face; (2) the Defendants "brought [him] to the ground" after he collided with Officer Sandoval during his attempt to run away; (3) the Defendants continued to attempt to force a shirt onto his body, having put it over his head and neck; (4) Officer Tisby grabbed him by the arm and redirected him after he attempted to self-harm by smashing his head into a soda machine; and (5) Officer Schmeits tased him after he accidentally bumped heads with Officer Tisby. (ECF No. 35.) He also alleges that at one point during the encounter he informed the Defendants that he could not breathe, although he does not explain why he could not breathe or even whether the Defendants were responsible for that condition that made his breathing difficult. He claims that the Defendants spoke to him mockingly on several occasions, despite his agonizing mental and physical pain.

All four Defendants argue that they are entitled to qualified immunity in this case.  As set forth above, the Defendants will be entitled to qualified immunity as long as their conduct was not unreasonable in light of clearly established law.  *Estate of Booker*, 745 F.3d at 411.  In order to demonstrate that the Defendants are *not* entitled to qualified immunity, Mr. Carey must show both that their actions violated a federal constitutional or statutory right, and that the right was clearly established at the time of the conduct.  *Id.*

"The Fourth Amendment forbids unreasonable seizures, including the use of excessive force in making an arrest."  *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment."  *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)).  The question is whether an officer's use of force was objectively reasonable, in light of the circumstances which they were confronting.  *Id.* at 397.  A claim for the use of excessive force must also demonstrate "some actual injury that is not de minimis, be it physical or emotional."  *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007).

Beginning first with the acts of force which Mr. Carey has alleged with relative clarity, the Court starts with Officer Sandoval's throwing of a shirt into Mr. Carey's face, repeatedly.  Mr. Carey has not cited any authority for the proposition that such an act constitutes a use of force, much less an unreasonable use of force.  Mr. Carey has not alleged any actual injury stemming from the throwing of the shirt, except that it upset him.  Though rude, the Court cannot conclude that by tossing a shirt in Mr. Carey's face he caused Mr. Carey an actual injury that was

12

more than de minimis.  This conduct, therefore, does not violate Mr. Carey's constitutional rights.

Mr. Carey alleges that Officer Tisby "grabbed [his] arm and . . . turned [him] around" while Mr. Carey was attempting to bang his head on a soda machine in order to self-harm.  He states that at the time Officer Tisby grabbed his arm, Mr. Carey was "still in a self-harming motion," attempting to bang his head again, and that he had his eyes closed.  Mr. Carey does not allege that Officer Tisby's grab of his arm caused him any injury whatsoever and, in fact, suggests that it actually prevented Mr. Carey from further injuring *himself*.  Again, without more, the Court concludes that Mr. Carey has not even alleged an injury that is more than de minimis and thus, Officer Tisby did not violate Mr. Carey's constitutional rights when he grabbed Mr. Carey's arm.

Mr. Carey asserts that Officer Schmeits tased him after he "accidentally bumped heads" with Officer Tisby.  He notes that he was still in hand restraints and that he therefore could not break his fall, so he hit his head "very hard on the floor" as he fell.  In this case, the Court concludes that Mr. Carey has asserted more than de minimis injury, given that a taser is "a weapon that sends up to 50,000 volts of electricity through a person's body, causing temporary paralysis and excruciating pain."  *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665 (10th Cir. 2010) (citation omitted).  The Court cannot, however, conclude that the use of the taser in these circumstances was unreasonable.  At the time Officer Schmeits deployed the taser, Mr. Carey had just been attempting to repeatedly bang his head on a soda machine.  Furthermore, he bumped heads with Officer Tisby—whether accidental or not, a reasonable officer in Officer Schmeit's position could have concluded that it was necessary to regain control over Mr. Carey for the purposes of both guarding Mr. Carey's own safety and the safety of the officers

13

themselves.  So the Court again concludes that this use of force did not violate Mr. Carey's constitutional rights.

The other two allegations are both stated in general terms.  The first is that Mr. Carey "jumped to run" and then "accidentally collided with Defendant Sandoval" before he was "brought to the ground by Defendants."  (ECF No. 35, p.7.)  The second alleges that Mr. Carey was in "agonizing pain mentally and physically with the excessive force [he] was going through and [he] still had the shirt that Defendants are still trying to force on [him] which was around [his] face and neck."  (ECF No. 35, p.8.)  Based on that, Mr. Carey states that he informed the Defendants that he could not breathe.

In order to raise a claim under 42 U.S.C. § 1983, it is necessary to trace a violation to a defendant's "own individual actions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  "When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his rights 'were violated' will not suffice.  Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights."  *Pahls v. Thomas*, 718 F.3d 1210, 1225–26 (10th Cir. 2013).  It is a plaintiff's burden to include in his or her pleading allegations of specific acts committed by specific defendants in order to state a viable claim.  *Id.* at 1226.

In the case of these two allegations, Mr. Carey has failed to specifically identify which defendants "brought [him] to the ground" or which defendants attempted to force a shirt over his head.  As a result, these allegations, too, fail to state a viable claim under § 1983.

Because the Court has concluded that Mr. Carey has failed to state a claim of a constitutional violation in his Complaint, it need not consider whether any such right was well established at the time.  *See Carabajal*, 847 F3d at 1208 (stating that "If the plaintiff fails to

14

satisfy either part of the inquiry, the court must grant qualified immunity."). Here, therefore, the Court is compelled to grant qualified immunity to each Defendant and DISMISS Mr. Carey's case.

IV.   **Conclusion**

Based on the foregoing, it is hereby **ORDERED**:

(1) That Defendants Sandoval, Schmeits, and Brown's Motion to Dismiss Pursuant to Rule 12(b)(6) (ECF No. 71) is **GRANTED**;

(2) That Defendant Tisby's Motion to Dismiss Plaintiff's Operative Complaint (ECF No. 73) is **GRANTED**;

(3) That Defendant Tisby's Motion to Strike Plaintiff's Proposed Complaint (ECF No. 84) is **GRANTED**; and

(4) That this case is **DISMISSED** and the Clerk is directed to CLOSE this case.

DATED this 4th day of January, 2024.

BY THE COURT:

_____

RAYMOND P. MOORE
Senior United States District Judge